Mary Kate Sullivan (State Bar No. 180203)
mks@severson.com
Edward R. Buell III (State Bar No. 240494)
erb@severson.com
Daska P. Babcock (State Bar No. 215172)
dpb@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants
WELLS FARGO BANK, N.A. and
U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR WELLS FARGO ASSET
SECURITIES CORPORATION, MORTGAGE
PASS THROUGH CERTIFICATES,
SERIES 2004-N

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — SAN FRANCISCO DIVISION

| | |
|---|---|
| TROY L. McNEIL and TRICIA A. McNEIL,<br><br>   Plaintiffs,<br><br>   vs.<br><br>WELLS FARGO BANK, N.A.;<br>U.S. BANK NATIONAL ASSOCIATION,<br>AS TRUSTEE, SUCCESSOR IN INTEREST<br>TO WACHOVIA BANK, NATIONAL<br>ASSOCIATION AS TRUSTEE FOR WELLS<br>FARGO ASSET SECURITIES<br>CORPORATION, MORTGAGE PASS<br>THROUGH CERTFICIATES, SERIES<br>2004-N;<br>CAL-WESTERN RECONVEYANCE, LLC,<br>and DOES 1-10, inclusive,<br><br>   Defendants. | Case No. 3:13-cv-05519 SC<br><br>Assigned to Senior District Court<br>Judge Samuel Conti<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>[Fed. R. Civ. P. 12(b)(6)]<br><br>Date:        April 4, 2014<br>Time:       10:00 a.m.<br>Judge:      Hon. Samuel Conti<br>Courtroom.:  1 (17th Floor)<br>Address:   450 Golden Gate Avenue<br>                San Francisco, CA |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 4, 2014, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of the above-entitled Court, at 450 Golden Gate Avenue, 17th floor, in San Francisco, California, defendants Wells Fargo Bank, N.A. ("Wells Fargo") and U.S. Bank National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass Through Certificates, Series 2004-N ("U.S. Bank") will and hereby do move for an order dismissing Wells Fargo and U.S. Bank from this action.

Wells Fargo and U.S. Bank make this motion under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint and each of the claims alleged therein fails to state a claim upon which relief may be granted against Wells Fargo or U.S. Bank.

Dated:  February 18, 2014           SEVERSON & WERSON
                                    A Professional Corporation


                                    By:   /s/ *Daska P. Babcock*
                                                Daska P. Babcock

                                    Attorneys for Defendants
                                    WELLS FARGO BANK, N.A. and
                                    U.S. BANK NATIONAL ASSOCIATION,
                                    AS TRUSTEE FOR WELLS FARGO ASSET
                                    SECURITIES CORPORATION, MORTGAGE PASS
                                    THROUGH CERTIFICATES, SERIES 2004-N

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 1

III. ARGUMENT ....................................................................................................................... 4

    A. Legal Standard ......................................................................................................... 4

    B. Plaintiffs' First Cause of Action, for Lack of Standing, Fails to State a Claim upon which Relief Can Be Granted ............................................................... 4

    C. Plaintiffs' Second Cause of Action, for Violation of California Civil Code Section 2923.55, Fails to State a Claim upon which Relief Can Be Granted .......... 6

    D. Plaintiffs' Third Cause of Action, for Promissory Estoppel, Fails to State a Claim upon which Relief Can Be Granted ............................................................... 7

    E. Plaintiffs' Fourth Cause of Action, for Breach of Implied Covenant of Good Faith and Fair Dealing, Fails to State a Claim upon which Relief Can Be Granted ...................................................................................................................... 9

    F. Plaintiffs' Fifth Cause of Action, for Intentional Misrepresentation, Fails to State a Claim upon which Relief Can Be Granted .................................................. 10

    G. Plaintiffs' Sixth Cause of Action, for Unfair and Deceptive Acts and Practices, Fails to State a Claim upon which Relief Can Be Granted ..................... 11

    H. Plaintiffs' Seventh Cause of Action, for Cancellation of Instruments, Fails to State a Claim upon which Relief Can Be Granted ............................................. 12

IV. CONCLUSION .................................................................................................................. 13

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ........................................................................................................ 4

*Balistreri v. Pacifica Police Department*,
　901 F.2d 696 (9th Cir. 1990) .......................................................................................... 4

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) ........................................................................................................ 4

*Intri-Plex Technologies, Inc. v. Crest Group, Inc.*
　499 F.3d 1048 (9th Cir. 2007) ........................................................................................ 4

*Lane v. Vitek Real Estate Industries Group*,
　713 F.Supp.2d 1092 (2010) ............................................................................................ 9

*MGIC Indem. Corp. v. Weisman*,
　803 F.2d 500 (9th Cir. 1986) .......................................................................................... 4

*Northstar International v. Arizona Corp. Commission*,
　720 F.2d 578 (9th Cir. 1983) .......................................................................................... 4

*Robertson v. Dean Witter Reynolds Co.*,
　749 F.2d 530 (9th Cir. 1984) .......................................................................................... 4

*Vess v. Ciba-Geigy Corp. USA*,
　317 F.3d 1097 (9th Cir. 2003) ...................................................................................... 10

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
　578 F.3d 1016 (9th Cir. 2007) ........................................................................................ 4

**STATE CASES**

*Agosta v. Astor*,
　120 Cal. App. 4th 596 (2004) ......................................................................................... 9

*Andrews v. Mobile Aire Estates*,
　125 Cal. App. 4th 578 (2005) ......................................................................................... 9

*Debrunner .v Deutsche Bank National Trust Co.*,
　204 Cal. App. 4th 433 (2012) ......................................................................................... 5

*Gomes v. Countrywide Home Loans, Inc.*,
　192 Cal. App. 4th 1149 (2011) ....................................................................................... 5

*Graddon v. Knight*,
　138 Cal. App. 2d 577 (1956) .......................................................................................... 7

*Jenkins v. JPMorgan Chase Bank, N.A. ("Jenkins")*,
    216 Cal. App. 4th 497 (May 12, 2013) ................................................................... 5, 11, 12

*Khoury v. Maly's of Cal., Inc.*,
    14 Cal. App. 4th 612 (1993) ................................................................................................ 11

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) .......................................................................................................... 11

*Lange v. TIG Ins. Co.*,
    68 Cal. App. 4th 1179 (1998) ................................................................................................ 7

*Lazar v. Super. Ct.*,
    12 Cal.4th 631 (1996) .......................................................................................................... 10

*Racine & Laramie, Ltd., Inc. v. Department of Parks and Recreation*,
    11 Cal. App. 4th 1026 (1992) .............................................................................................. 10

*Secrest v. Security Nat'l Mortgage Loan Trust*,
    167 Cal. App. 4th 552 (2008) ................................................................................................ 8

*Thomson v. Internat'l Alliance of Theatrical Stage Employees & Moving Picture Mach.*
    *Operators*,
    232 Cal. App. 3d 446 (1965) ................................................................................................. 7

*Waller v. Truck Ins. Exchange, Inc.*,
    11 Cal. 4th 1 (1995) ............................................................................................................... 9

**STATE STATUTES**

California Business and Professions Code,
§§ 17200-17210 .......................................................................................................................... 11
§ 17204 ....................................................................................................................................... 11

Cal. Civ. Code,
    § 2923.5 ............................................................................................................................... 11
    § 2924(a)(1) ........................................................................................................................... 5
    § 3412 .................................................................................................................................. 13

**RULES**

Federal Rule of Civil Procedure 9(b) ........................................................................................ 10

Federal Rule of Civil Procedure 12(b)(6) ................................................................................... 4

## MEMORANDUM OF POINTS & AUTHORITIES

### I. INTRODUCTION

Plaintiffs Troy L. McNeil and Tricia A. McNeil borrowed $536,000 in April 2004 from Wells Fargo Home Mortgage, Inc. (which later merged with Wells Fargo Bank, N.A., referred to herein as "Wells Fargo").  The McNeils obtained a loan modification through Wells Fargo in 2010.

The McNeils sought a second loan modification a year later but were denied because the investor's rules for their loan allow for only one modification during the life of the loan.

The McNeils now sue Wells Fargo (their loan servicer), U.S. Bank (the trustee of the loan trust that owns the McNeils' loan), and Cal-Western Reconveyance, LLC (the foreclosure trustee, now in bankruptcy) to delay the nonjudicial foreclosure sale of their property.  Because the McNeils admit they have already obtained one loan modification and have been informed that the investor rules applicable to their loan allow only one modification during the life of the loan, the McNeils' causes of action related to the denial of their loan modification applciaiton fail to state a claim upon which relief can be granted.

Plaintiffs also allege, on information and belief, that the trustee lacks standing to foreclose because their promissory note was not transferred into the loan trust before the trust's closing date which, they contend, violated the applicable Pooling and Servicing Agreement relating to the trust, thus making made every title instrument recorded thereafter void.  Because the McNeils have no standing to enforce the Pooling and Servicing Agreement, these allegations likewise fail to state a claim.

Wells Fargo and U.S. Bank's motion to dismiss the McNeils' complaint should be granted. Because amendment would be futile, the dismissal should be with prejudice.

### II. STATEMENT OF FACTS

In or about April 2004, plaintiffs Troy L. McNeil and Tricia A. McNeil ("Plaintiffs") purchased the real property located at 2337 Senger Street in Livermore, California 94550 (the "Subject Property").  (Req. Jud. Not. ("RJN"), Ex. 1.)  Plaintiffs financed their purchase of the Subject Property with an adjustable rate loan for $536,000 from Wells Fargo Home Mortgage, Inc.

1  (the "First Loan"), secured by a deed of trust (the "First Loan DOT") recorded against the Subject
2  Property.  (Compl., ¶ 18; RJN, Ex. 2.)  The First Loan DOT identifies the trustee as Fidelity
3  National Title Insurance Company ("Fidelity").  (Compl., ¶ 18; RJN, Ex. 2 at p. 2.)
4       Wells Fargo Bank, N.A., successor by merger ("s/b/m") to Wells Fargo Home Mortgage,
5  Inc., recorded an assignment of its beneficial interest under the Wells Fargo DOT to US Bank
6  National Association, as Trustee, Successor in Interest to Wachovia Bank, National Association as
7  Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-through Certificates, Series
8  2004-N ("US Bank").  (Compl., ¶ 20, 26, and Ex. B; RJN, Ex. 3.)
9       Plaintiffs allege that the trust to which the assignment refers is registered with the
10 Securities and Exchange Commission under file number 333-116509-03 (Compl., ¶ 21) and had a
11 closing date of July 29, 2004 (Compl., ¶ 23).  Plaintiffs further allege, solely on information and
12 belief, that their promissory note "was never transferred to the Trust pursuant to the PSA before
13 the closing date." (Compl., ¶ 23).  Based on that allegation, Plaintiffs assert that US Bank has "no
14 standing to foreclose." (*Id.*)
15      In December 2011, the trustee, Fidelity, recorded a notice of default stating that, as of
16 December 8, 2011, Plaintiffs owed $24,846.53 in past-due payments plus permitted costs and
17 expenses on the First Loan.  (Compl., ¶ 24, and Ex. C; RJN, Ex. 4.)
18      In March 2012, Fidelity recorded a notice of trustee's sale based on Plaintiffs' uncured
19 default on the First Loan.  (Compl., ¶ 25 and Ex. D; RJN, Ex. 5.)
20      On June 7, 2012, Plaintiffs signed a loan modification agreement ("Modification
21 Agreement") with Wells Fargo, their loan servicer.  (Compl., ¶ 26; RJN, Ex. 6.)  The Modification
22 Agreement refers to Wells Fargo in short form as "Lender."  (Compl., ¶ 26; RJN, Ex. 6 at p. 1.)
23 The Modification Agreement created a "Secondary Principal Balance" of $34,212.59, on which no
24 interest accrues (RJN, Ex. 6 at p. 1, ¶ 1), and dropped the interest rate on the remaining balance to
25 2.50% for six years (*id.* at p. 2, ¶ 2).  The Modification Agreement requires Plaintiffs to make
26 monthly principal and interest payments totaling $2,424.62 beginning July 1, 2012.  (RJN, Ex. 6 at
27 p. 2, ¶ 2; *see also* Compl., ¶ 27.)  The Modification Agreement also provides that, "In addition to
28 monthly principal and interest, [Plaintiffs] shall make monthly escrow deposits as defined in the

1 Note.  **Escrow deposit payments may be subject to change in the future.**" (*Id.* (emphasis added); *see also* Compl., ¶ 27.)

Plaintiffs allege Wells Fargo added "some other charges" to their monthly payments, causing their monthly payment amount to increase from $3,224 to approximately $4,400. (Compl., ¶ 27.)  Plaintiffs allege they "could not afford the 'extra' charges…." (*Id.*)

On February 4, 2013, US Bank recorded a substitution of trustee designating Cal-Western Reconveyance Corporation ("Cal-Western") as the new trustee in relation to the First Loan DOT. (Compl., ¶ 28, Ex. E; *see also* RJN, Ex. 7.)

Cal-Western then recorded a notice of default on February 4, 2013, stating that Plaintiffs had failed to pay their monthly payment due August 1, 2012, and subsequent installments and late charges, so that by January 31, 2013, Plaintiffs owed arrearages of $29,644.95.  (Compl., ¶ 29, Ex. F; RJN, Ex. 8.)

Cal-Western recorded a notice of trustee's sale on May 6, 2013, giving notice of a sale set for May 28, 2013.  (Compl., ¶ 30, Ex. G; *see also* RJN, Ex. 9.)

The McNeils applied for a new loan modification.  (Compl., ¶ 31.)  The trustee's sale was postponed while their application was under consideration.  In a letter dated June 12, 2013, Wells Fargo informed the McNeils their application for a HAMP modification was denied because "[w]e do not have the contractual authority to modify your loan under HAMP because of limitations in our servicing agreement.  Therefore, the investor who owns your mortgage has declined the request to modify your mortgage." (*See* Compl., ¶ 31; RJN, Ex. 10.)  Plaintiffs understood the denial to be based on the fact that they "had exceeded the number of modifications allowed by the investor." (Compl., ¶ 31.)  Plaintiffs contend the reason given for the denial is "inaccurate." (*Id.*)

Cal-Western recorded a new notice of trustee's sale on September 24, 2013, giving notice of a sale date of October 16, 2013.  (RJN, Ex. 11.)

Plaintiffs filed their complaint in the present action on October 1, 2013.  (*See* Dkt. No. 1-1, Ex. 2 (Complaint).)  The trustee's sale has been postponed to April 14, 2014.

# III.  ARGUMENT

## A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may challenge the sufficiency of the statement of the claim for relief.  (*See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).)  Accepting only the factual allegations set forth in the plaintiff's complaint as true, the Court must decide whether plaintiff is entitled to some form of legal remedy.  (*Id.,* 550 U.S. at p. 555.)  It need not "accept as true a legal conclusion couched as a factual allegation."  (*Id.*)  As described by the United States Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the standard articulated in *Twombly* "…asks for more than a sheer possibility that a defendant has acted unlawfully."  (*Iqbal,* 556 U.S. at p. 678.)  Indeed, the standard "…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  (*Id.*)  Granting a Rule 12(b)(6) motion to dismiss is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts to support a cognizable legal theory.  (*See Balistreri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds Co.,* 749 F.2d 530, 534 (9th Cir. 1984).)  A dismissal also is proper if a complaint is vague, conclusory, and fails to set forth material facts in support of the allegations.  (*See Northstar International v. Arizona Corp. Commission,* 720 F.2d 578, 583 (9th Cir. 1983).)

In addition to the facts alleged in the complaint, matters that are properly the subject of judicial notice may also be considered when deciding a motion to dismiss for failure to state a claim.  (*See MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986).)  The court can disregard allegations in the complaint that are contradicted by judicially noticeable facts.  (*See Von Saher v. Norton Simon Museum of Art at Pasadena,* 578 F.3d 1016, 1021-22 (9th Cir. 2007).)  One example of such facts is matters of public record.  (*See Intri-Plex Technologies, Inc. v. Crest Group, Inc.* 499 F.3d 1048, 1052 (9th Cir. 2007).)

## B.  Plaintiffs' First Cause of Action, for Lack of Standing, Fails to State a Claim upon which Relief Can Be Granted

Plaintiffs assert that the securitized mortgage loan trust pool into which their loan was transferred had a closing date of July 29, 2004, by which date all promissory notes were to be

1  transferred into the trust.  (Compl., ¶ 44.)  Plaintiffs allege, based only on information and belief,
2  that "the Note in this case was never transferred to the Trust pursuant to the PSA before the
3  closing date."  (Compl., ¶ 44.)  The only conceivable, factual support for this allegation is that the
4  formal assignment of the deed of trust from Wells Fargo to U.S. Bank National Association, as
5  trustee (etc.) was signed November 25, 2011.  (Compl., ¶¶ 20, 23.)
6        Assuming the promissory note itself, as opposed to the Deed of Trust, was not transferred
7  into the trust until after the closing date set forth in the Pooling & Servicing Agreement ("PSA"),
8  the plaintiffs, as third parties unrelated to the transactions by which their loan was securitized, lack
9  standing to enforce the terms of the PSA.  (*Jenkins v. JPMorgan Chase Bank, N.A. ("Jenkins"),*
10 216 Cal. App. 4th 497, 511 (May 12, 2013).)  Moreover, California appellate courts have
11 repeatedly rejected arguments that a claim based on "information and belief" that an entity
12 initiating a nonjudicial foreclosure lacks authority to do so because it is not the owner of the
13 promissory note improperly seeks to create a requirement, in addition to the requirements of
14 California's comprehensive nonjudicial foreclosure statute, that the foreclosing entity
15 "demonstrate in court that it is authorized to initiate a foreclosure" before the foreclosure can
16 proceed.  (*Jenkins,* 216 Cal. App. 4th at p. 512, citing *Gomes v. Countrywide Home Loans, Inc.,*
17 192 Cal. App. 4th 1149, 1154, fn. 5 (2011); *Debrunner .v Deutsche Bank National Trust Co.,* 204
18 Cal. App. 4th 433, 440-442 (2012) (foreclosing party is not required to produce the original note
19 or otherwise prove that it holds the note).)  The statutes that govern nonjudicial foreclosure in
20 California broadly authorize a "trustee, mortgagee, or beneficiary, or any of their authorized
21 agents" to initiate a nonjudicial foreclosure and do *not* require the foreclosing entity to have a
22 beneficial interest in both the promissory note and deed of trust.  (*Jenkins,* 216 Cal. App. 4th at
23 p. 513.)  This remains true in the current version of California's nonjudicial foreclosure statute.
24 (*See* Cal. Civ. Code, § 2924(a)(1).)  In light of this, preemptive actions, such as this one, to
25 challenge the foreclosing entity's authority to foreclose, in the absence of specific allegations of
26 fact – rather than boilerplate allegations made on "information and belief" – are not permitted.
27 (*Jenkins,* 216 Cal. App. 4th at p. 513.)  Plaintiffs' first cause of action fails to state a claim under
28 California law and must be denied.

**C.     Plaintiffs' Second Cause of Action, for Violation of California Civil Code Section 2923.55, Fails to State a Claim upon which Relief Can Be Granted**

Plaintiffs' second cause of action, which alleges that Wells Fargo and U.S. Bank failed to comply with California Civil Code section 2923.55 "by recording unreliable evidence of default," fails to state a claim.  The allegations preceding this one are lengthy and detailed but uninformative as to how these defendants actually failed to comply with Civil Code section 2923.55.  In fact, by plaintiffs' own allegations, the defendants more than fully complied with the statute.  Plaintiffs had previously applied for and obtained a loan modification through their loan servicer, Wells Fargo.  (Compl., ¶ 45.)  The Modification Agreement states the escrow deposit payments would be subject to change.  (RJN, Ex. 6 at p. 2.)  The escrow deposit payments increased, after which plaintiffs "could not afford" the new monthly payments.  (Compl., ¶ 46.)  Nonjudicial foreclosure proceedings began.  (Compl., ¶¶ 47-49.)  Just before the trustee's sale, plaintiffs applied for a second loan modification.  (Compl., ¶ 50.)  They were denied on the ground that their loan's investor only allows one modification, leaving their loan servicer without contractual authority to allow a second modification.  (*Id.*)  Plaintiffs appealed that decision with the same result.  (Compl., ¶ 52.)  The denial of their appeal was dated July 3, 2013.  (Compl., ¶ 65.)  The most recently recorded notice of trustee's sale gave notice of a sale set for October 16, 2013 (RJN, Ex. 11), and that has been postponed to April 14, 2014.

In short, after the McNeils were granted a loan modification, by their own allegation, they became unable to afford the modified payments.  They were considered for a second loan modification and were informed of the outcome of both their application and appeal.  The sale has been postponed for far longer than the statute requires.  Plaintiffs fail to identify any factual basis for their Civil Code section 2923.55 claim or even which part of the lengthy code section they contend was violated.  The facts described in plaintiffs' own complaint demonstrate that there was no violation.  Plaintiffs' second cause of action fails to state any violation of Civil Code section 2923.55, and because they did obtain a modification and admit they were reviewed but found ineligible for a second modification, they cannot alter their allegations to state a claim under Civil Code section 2923.55.  This claim should be dismissed without leave to amend.

**D.  Plaintiffs' Third Cause of Action, for Promissory Estoppel, Fails to State a Claim upon which Relief Can Be Granted**

A claim for promissory estoppel requires an allegation of a promise that is clear and unambiguous in its terms and reasonable and justified reliance thereon, to the complaining party's detriment.  (*Lange v. TIG Ins. Co.,* 68 Cal. App. 4th 1179, 1185 (1998); *Thomson v. Internat'l Alliance of Theatrical Stage Employees & Moving Picture Mach. Operators,* 232 Cal. App. 3d 446, 453 (1965); *Graddon v. Knight,* 138 Cal. App. 2d 577, 583 (1956).)  The McNeils' broadly-alleged promise that Wells Fargo "made a promise, through oral and written representations, that they would not foreclose on the subject property if Plaintiffs completed an application for a loan modification and Plaintiffs were willing to make monthly payments in an amount certain," is too vague to satisfy this element of a promissory estoppel claim.  The alleged promise lacks "sufficient definitiveness and clarity… to justify applying promissory estoppel."  (*Lange,* 68 Cal. App. 4th at 1185.)  The allegation does not identify any of the supposed "oral and written representations" in which this promise was set forth.  On this ground alone, the claim must be dismissed.

Plaintiffs appear to be referring to their Modification Agreement as the basis for their promissory estoppel claim.  (*See* Compl., ¶¶ 76-78.)  Plaintiffs' allegations as to the promises made in the loan modification agreement are not accurate.  The Modification Agreement expressly requires that plaintiffs make their loan payments – not merely to be "willing" to make them – and provides that escrow amounts are subject to change in the future, rather than being set in a "sum certain."  (RJN, Ex. 6, p. 2, ¶ 2; *see also* Compl., ¶ 77 ("plus escrow deposit payments which may be subject to change in the future…").)

Plaintiffs' allegation that there were additional, oral promises made in conjunction with the Modification Agreement is untenable in light of the "NOTICE OF NO ORAL AGREEMENTS" that comprises the final page of their loan modification agreement.  (*See* RJN, Ex. 6, p. 5.)  The NOTICE OF NO ORAL AGREEMENTS, signed by both of the plaintiffs, states, in all-capital, bold face letters:

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

Plaintiffs allege they relied on Wells Fargo's promise not to foreclose by "making payments" (Compl., ¶ 72) but do not allege they made *all* their modified payments. To the contrary, plaintiffs allege they became unable to afford their modified payments after the escrow deposit amounts increased. (Compl., ¶ 77.) Any payments the McNeils did make fail to satisfy the reliance element of a promissory estoppel claim because they already owed the money under their original note and deed of trust. The payment of money already due under an existing loan agreement does not constitute fresh consideration such as to satisfy the reliance element. (*Secrest v. Security Nat'l Mortgage Loan Trust,* 167 Cal. App. 4th 552 (2008).)

Plaintiffs also fail to establish the "reasonable reliance" element of a promissory estoppel claim. Even if plaintiffs subjectively understood a completed loan modification application and "willingness" to pay as comprising the entirety of their end of the bargain, it was not *reasonable* for them to act in reliance on a belief that their completion of a loan modification application and "willingness" to make payments on a modified, secured loan would be sufficient performance to avoid foreclosure forever, even when they were no longer able to make their payments – especially when plaintiffs signed loan documents with express provisions as to the consequences of default and a Modification Agreement clearly stating their agreement that there were no oral agreements to contradict the written one. (*See* RJN, Ex. 6.)

For these reasons, plaintiffs' third cause of action fails to alleges facts that push the claim over the line from the implausible to the plausible. This claim should be dismissed without leave to amend.

**E.   Plaintiffs' Fourth Cause of Action, for Breach of Implied Covenant of Good Faith and Fair Dealing, Fails to State a Claim upon which Relief Can Be Granted**

Plaintiffs' fourth cause of action fails to state a claim for breach of the implied covenant of good faith and fair dealing. While plaintiffs' claim starts out by reciting the contours of the implied covenant (Compl., ¶ 81), it goes on to regurgitate the factual allegations made earlier in the complaint (Compl., ¶¶ 82-93), boilerplate allegations as to defendants' purported, tort-based duty of care (Compl., ¶¶ 94-95) (which, even if true, would not be applicable in an implied covenant claim), defendants' purported violations of California law (Compl., ¶ 95) (not the basis for an implied covenant claim), and lack of authority to foreclose (Compl., ¶ 95) (again, not the basis for an implied covenant claim). Twenty-four out of the first 25 paragraphs of plaintiffs' fourth cause of action contribute nothing in support of the implied covenant claim.

Plaintiffs' claim fails because it depends on a duty that is neither created nor implied in any of the loan documents. "A typical formulation of the burden imposed by the implied covenant of good faith and fair dealing is 'that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" (*Lane v. Vitek Real Estate Industries Group,* 713 F.Supp.2d 1092, 1102 (2010), quoting *Andrews v. Mobile Aire Estates,* 125 Cal. App. 4th 578, 589 (2005).) The implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Id.,* 713 F.Supp.2d at p. 1102, quoting *Agosta v. Astor,* 120 Cal. App. 4th 596, 607 (2004).) "Absent a contractual right … the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." (*Id.,* 713 F.Supp.2d at p. 1102, quoting *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal. 4th 1, 36 (1995).)

Plaintiffs' allegations fail to cite any provision in any of their loan documents that suggests the investor in their loan promised to provide multiple loan modifications upon plaintiffs' request. This is not for failure of the loan documents to contemplate the possibility of nonpayment. The original loan documents contain express provisions as to the consequences of nonpayment. (*See, e.g.,* RJN, Ex. 2, ¶¶ 1, 9, 22.) None of them gives assurance of a loan modification being offered – much less, of multiple loan modifications being granted in succession. Furthermore, the loan

modification agreement leaves the relevant terms of the original contract intact.  (*See* RJN, Ex. 6, p. 2, ¶ 5(b):  "All the rights and remedies… contained in the Security Instrument relating to default in the making of payments… shall also apply to default in the making of the modified payments hereunder.")  As a general rule, no party to a contract has a duty to negotiate new terms of or to modify the contract.  (*Racine & Laramie, Ltd., Inc. v. Department of Parks and Recreation,* 11 Cal. App. 4th 1026, 1030 (1992).)

Because plaintiffs have cited and can cite no contractual basis for the proposition that their investor owes a duty to grant a second modification of their mortgage loan, their cause of action for breach of the implied covenant of good faith and fair dealing fails to state a claim and must be dismissed with prejudice.

**F.    Plaintiffs' Fifth Cause of Action, for Intentional Misrepresentation, Fails to State a Claim upon which Relief Can Be Granted**

Plaintiffs' fifth cause of action, like the fourth, regurgitates the core of their claim and their desire for a second loan modification.  This cause of action includes no real attempt at stating a claim for intentional misrepresentation, otherwise known as fraud.  The elements of a fraud claim are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages.  (*Lazar v. Super. Ct.,* 12 Cal.4th 631, 638 (1996).)  A district court may dismiss a claim grounded in fraud when its allegations fail to satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).  (*Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1107 (9th Cir. 2003).)  The plaintiffs must allege "the who, what, when, where, and how" of the fraud.  (*Vess,* 317 F.3d at p. 1106.)

Plaintiffs' fifth cause of action fails to identify any particular misrepresentation on which they allege they justifiably relied to their detriment or how they were damaged thereby and utterly fails to allege the "who, what, when, where, and how" of any fraud.  For these reasons, the fifth cause of action must be dismissed for failing to state a claim upon which relief can be granted.

**G.    Plaintiffs' Sixth Cause of Action, for Unfair and Deceptive Acts and Practices, Fails to State a Claim upon which Relief Can Be Granted**

Plaintiffs' sixth cause of action, to which plaintiffs refer as "Unfair and Deceptive Business Act Practices," and which is more commonly referred to as the Unfair Competition Law ("UCL") (*Jenkins, supra,* 216 Cal. App. 4th at p. 520), codified at California Business and Professions Code sections 17200-17210, fails to establish the elements of the claim.

Plaintiffs' UCL claim is based, in part, on the alleged failures of "Defendants" to comply with California Civil Code section 2923.5 and HAMP. (Compl., ¶ 116(e), (f).) Plaintiffs do not assert a Section 2923.5 claim in their complaint and do not explain within their UCL claim how any of the "Defendants" violated Section 2923.5 or HAMP.

To have standing to assert a UCL claim, the plaintiffs must allege they personally suffered an econonic injury, i.e., a loss or deprivation of money or property sufficient to qualify as injury in fact. (*Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 322 (2011).) A plaintiff must state "with reasonable particularity" the facts supporting the elements of a UCL claim. (*Khoury v. Maly's of Cal., Inc.,* 14 Cal. App. 4th 612, 619 (1993).) Plaintiffs' sixth cause of action states that "Plaintiffs has [sic] suffered and continues [sic] to suffer damages in a sum which is, as yet unascertained." (Compl., ¶ 133.) The source of these "damages" is not identified within the claim. "Damages" is not one of the remedies afforded by the UCL. "A plaintiff may pursue a UCL action in order to obtain either (1) injunctive relief, the primary form of relief available under the UCL, or (2) restitution as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by menas of such unfair competition." (*Jenkins, supra,* 216 Cal. App. 4th at p. 520 (internal quotations omitted).) Plaintiffs do not allege they have actually lost any property as to which restitution could be provided. Nor do they identify which alleged actions by which defendants, if any, they seek to have enjoined other than the foreclosure sale of the subject property. (Compl., p. 38, ¶ 1.)

The pending foreclosure sale of the property is not a sufficient basis for plaintiffs to state a UCL claim. Business and Professions Code section 17204 requires a causal link between the plaintiffs' alleged, economic injury and the allegedly unfair, unlawful, or fraudulent conduct of

each of the defendants. Plaintiffs do not deny they took the subject loan. Nor do they deny they signed the deed of trust granting the trustee the power of sale to secure the loan, with the subject property designated as the collateral. By plaintiffs' own allegations, the notice of default was recorded, initiating the pending foreclosure proceedings, only *after* they became unable to afford their loan payments. (Compl., ¶ 46.) Plaintiffs' property is not in foreclosure because of the activities plaintiffs now claim were UCL violations. Plaintiffs' property is in foreclosure because they defaulted on their loan. In that regard, this case is much like *Jenkins v. JPMorgan Chase Bank, N.A.,* where the court observed:

> It is also indisputable Jenskins's default triggered the lawful enforcement of the power of sale clause in the deed of trust, and it was the triggering of the power of sale clause that subjected Jenkins's home to nonjudicial foreclosure. …Thus, even if we assume Jenkins's third cause of action alleges facts indicating Defendants' actions violated at least one of the UCL's three unfair competition prongs (unlawful, unfair, or fraudulent), Jenkins's SAC cannot show any of the alleged violations have a causal link to her economic injury.

(*Jenkins, supra,* 216 Cal. App. 4th at p. 523.) Here, as in *Jenkins,* the plaintiffs fail to state a UCL claim because they fail to plead facts sufficient to establish causation.

For these reasons, plaintiffs' sixth cause of action should be dismissed with prejudice.

**H.     Plaintiffs' Seventh Cause of Action, for Cancellation of Instruments, Fails to State a Claim upon which Relief Can Be Granted**

Plaintiffs' seventh cause of action first refers to "the wrongfully recorded Notice of Default, Notice of Trustee's Sale and Trustee's Deed Upon Sale instruments…." (Compl., ¶ 135), then says plaintiffs seek cancellation of "a) the Assignment; b) Notice of Default; and c) the Notice of Trustee's Sale" (Compl., ¶ 136). There is no trustee's deed upon sale to be cancelled, as the sale has not yet occurred. Plaintiffs apparently seek cancellation of the Corporate Assignment of Deed of Trust recorded December 1, 2011 (RJN, Ex. 3), the Notice of Default recorded February 4, 2013 (RJN, Ex. 8), and one of the notices of trustee's sale recorded thereafter (*see* RJN, Exs. 9, 11).

Plaintiffs' claim for cancellation fails because the plaintiffs lack standing to enforce the terms of the PSA that apply to the mortgage loan trust holding their loan. California's Civil Code

provides that a "written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person *against whom* it is void or voidable, may, on that person's application, be so adjudged and ordered to be delivered up or canceled." (Cal. Civ. Code, § 3412, emphasis added.)  The only allegations in the complaint as to why the three title instruments are void as *against plaintiffs* is that the purportedly late assignment of their note into the mortgage loan trust made the assignment and all subsequent instruments based thereon void.  This argument holds no water with respect to the plaintiffs because they are not parties to the PSA.  Plaintiffs do not and cannot truthfully deny they signed the deed of trust securing their Wells Fargo loan.  By signing the deed of trust, plaintiffs agreed their note and deed of trust could be sold one or more times without notice.  (RJN, Ex. 2, p. 14, ¶ 20.)  Plaintiffs cite no provision of the note or deed of trust that assures them the loan documents will be transferred in compliance with the terms of a PSA. Therefore, a failure to comply with the PSA would not invalidate the transfers of the note or deed of trust as against plaintiffs.  The assignment is not void as against plaintiffs and the notice of default and notice of trustee's sale recorded by the assignee are not void, either.

## IV.  CONCLUSION

For all the foregoing reasons, the motion to dismiss Plaintiffs' complaint should be granted and the complaint dismissed with prejudice.

Dated:  February 18, 2014

Respectfully submitted,

SEVERSON & WERSON
A Professional Corporation

By: /s/ *Daska P. Babcock*
 Daska P. Babcock

Attorneys for Defendants
WELLS FARGO BANK, N.A. and
U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR WELLS FARGO ASSET
SECURITIES CORPORATION, MORTGAGE
PASS THROUGH CERTIFICATES, SERIES 2004-N